**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1554

_____

RANDY LONG,
individually and on behalf of all others similarly situated,
Appellant

v.

TOMMY HILFIGER U.S.A., INC.

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 09-cv-01701)
District Judge:  Honorable Joy Flowers Conti

_____

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2011

_____

Before: HARDIMAN, BARRY and VAN ANTWERPEN,
<u>Circuit Judges</u>

(Opinion Filed: January 24, 2012)

_____

Gary F. Lynch
Stephanie K. Goldin
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107

<u>Counsel for Appellant</u>

John G. Papianou
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street, 24th Floor
Philadelphia, PA 19109
      -and-
Stanley M. Stein
Feldstein, Grinberg, Stein & McKee
428 Boulevard of the Allies
Pittsburgh, PA 15219

Counsel for Appellee

———————

OPINION OF THE COURT

———————

BARRY, Circuit Judge

The Fair and Accurate Credit Transactions Act ("FACTA") provides, in relevant part, that merchants who accept credit or debit cards shall not print "the expiration date" of the cards upon any receipt provided to the cardholder at the point of the sale. The question in this case is whether a retailer willfully violates that statute by printing the expiration month, but not the year, of the credit card on a receipt. The District Court answered that question in the negative, and dismissed appellant Randy Long's complaint against Tommy Hilfiger U.S.A., Inc. We will affirm.

**I.**

On October 29, 2009, Long made a purchase of "men's neckwear" using his credit card at a Hilfiger store in Grove City, Pennsylvania. His credit card was charged $24.99, and Hilfiger gave him an electronically-printed receipt that redacted all but the last four digits of his credit card number and displayed the month, but not the year, of his card's expiration date. In pertinent part, the receipt read as follows:

2

SALESPERSON  #  8399

881300009340        MENS NECKWEAR        24.99

TOTAL                                    $24.99
VISA                                     $24.99
#############9802
PURCHASE
EXPIRY:  04/##  SWIPED

(JA 46.)

On December 29, 2009, Long filed this action against Hilfiger alleging that Hilfiger's printing of "EXPIRY: 04/##" on his receipt willfully violated FACTA's prohibition against printing the expiration date.  Long sued on his own behalf and asserted a putative nationwide class action on behalf of all others similarly situated.  He sought statutory damages for the alleged violation, as well as punitive damages, attorneys' fees, and costs.

Hilfiger moved to dismiss Long's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  With the consent of the parties, the District Court denied the motion without prejudice and referred the case to mediation.  Mediation was unsuccessful, and Hilfiger renewed the motion to dismiss.  On February 11, 2011, the District Court granted the motion, concluding that (1) printing the month of expiration, standing alone, did not constitute the printing of an "expiration date" under the statute, and (2) in any event, Long could not recover because the alleged violation was not "willful."  Long appealed.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  We have appellate jurisdiction under 28 U.S.C. § 1291, and exercise plenary review over both the grant of a motion to dismiss, *Fagin v. Gilmartin*, 432 F.3d 276, 281 (3d Cir. 2005), and questions of statutory interpretation, *DIRECTV*

3

*Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007).

## A.

In 2003, Congress amended the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by enacting FACTA. *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003). As part of an effort to prevent identity theft, FACTA prohibits merchants from printing certain credit and debit card information on receipts. In particular, it provides:

> (g) Truncation of credit card and debit card numbers
>
> . . . .
>
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).[1]

FACTA imposes civil liability for violations of this provision, with the available remedies dependent upon whether the violation was negligent or willful. If a merchant's violation was merely negligent, a plaintiff may recover only *actual* damages, and statutory damages are not available. *Id*. at § 1681o(a)(1). If the violation was willful, however, FACTA allows a plaintiff to elect to recover either actual damages or statutory damages between $100 and $1,000. *Id*. at § 1681n(a)(1)(A). A court may also award punitive damages in cases involving willful violations. *Id*. at § 1681n(a)(2).

---

[1] FACTA expressly limits the reach of this subsection "to receipts that are electronically printed, and [does] not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681c(g)(2).

4

In 2008, almost five years after the passage of FACTA, Congress enacted the "Credit and Debit Card Receipt Clarification Act" ("Clarification Act"). *See* Pub. L. No. 110-241, 122 Stat. 1565 (2008). The Clarification Act arose from "hundreds of lawsuits" that were filed against merchants after the effective date of FACTA, alleging that merchants' "failure to remove the expiration date was a willful violation" of the statute, even though the account number was properly truncated. Clarification Act § 2(a)(4), 122 Stat. at 1565. Congress found that many merchants mistakenly believed that § 1681c(g) would be satisfied solely by truncating the card number and not the expiration date. *Id*. at § 2(a)(3), 122 Stat. at 1565. It noted that none of the lawsuits that had been filed alleged any actual harm to the consumer's identity, and "[e]xperts in the field agree that proper truncation of the card number . . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." *Id*. at § 2(a)(5)-(6), 122 Stat. at 1565. It deemed these lawsuits to be a significant burden on businesses, without any corresponding consumer benefit. *Id*. at § 2(a)(7), 122 Stat. at 1565-66. Therefore, Congress amended FACTA to state that any merchant who printed an expiration date, but otherwise complied with FACTA, between the dates of December 4, 2004 and June 3, 2008, shall not be deemed in willful noncompliance with § 1681c(g). *Id*. at § 3(a) (codified at 15 U.S.C. § 1681n(d)), 122 Stat. at 1566.

## B.

This appeal raises two related questions. The first is whether Long's allegation that Hilfiger printed his credit card's expiration month, but not the year, states a claim under FACTA. If so, the second question is whether such a violation of the statute meets the standard for "willfulness." These are issues of first impression among the federal courts of appeals. We will address each in turn.

## 1.

Determining whether Long has stated a claim under

5

FACTA requires us to interpret the statute. The principles governing statutory interpretation are well-known. Our role is to give effect to Congress's intent, which we assume is expressed in the ordinary meaning of the statutory language. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008). In analyzing whether the statutory language is unambiguous, "we take account of 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id*. (quoting *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004). We also consider the "overall object and policy of the statute, and avoid constructions that produce odd or absurd results or that are inconsistent with common sense." *Id*. (citation and internal quotation marks omitted). In addition to following these general rules of statutory interpretation, we are mindful that remedial legislation should be construed broadly to effectuate its purpose. *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998).

The critical inquiry before us is the meaning of FACTA's requirement that no person shall print "the expiration date." The phrase "expiration date" is not defined in the statute. Hilfiger argues, however, that the phrase refers to an ascertainable date on which the credit or debit card ceases to be valid, and requires the simultaneous coexistence of both the month and the year. Hilfiger concludes, therefore, that merely printing "April" or "04" does not constitute printing an "expiration date" within the meaning of § 1681c(g)(1).

We disagree. Taking Hilfiger's argument to its logical conclusion, a merchant would not violate FACTA so long as it redacted even a single number from either the month or year of the card's expiration date. Furthermore, different merchants could each choose to redact different portions of the expiration date, making it possible to ascertain the entire expiration date from multiple receipts. This, of course, would be inconsistent with the statute's objective of preventing identity theft and a result certainly not intended by Congress.

We conclude that the most natural reading of the

6

phrase "expiration date" is that it refers to the information or data (usually a string of numbers) contained in the expiration date "field" on the face of the credit or debit card. In other words, FACTA is best read as prohibiting merchants from printing the numbers in that field, which Long alleges Hilfiger did in this case by printing "EXPIRY: 04/##." The fact that Hilfiger printed only a *part or portion* of the expiration date numbers from Long's credit card does not change the result. To be sure, FACTA is silent as to the effect of a partial printing of the expiration date. Nevertheless, if Congress had intended to allow a partial printing, it would have used language similar to what it used for credit or debit card numbers. With respect to card numbers, Congress clearly indicated the scope of disclosure allowed by specifically stating that no merchant shall print "*more than the last 5 digits* of the card number." 15 U.S.C. § 1681c(g)(1) (emphasis supplied). Congress demonstrated that it knew how to use language allowing for the partial disclosure of information, but elected not to include any such language in the context of expiration dates. Therefore, we cannot conclude that FACTA provides an exception for merchants who redact part of the expiration date information on the receipt.

Hilfiger's reliance on the Clarification Act is unpersuasive. Despite having the occasion to specifically consider the issue of expiration dates, Congress did not change the actual language of § 1681c(g)(1) or otherwise alter the liability standard of the statute. Just as before, the statutory language stated that "no person . . . shall print . . . the expiration date" on a receipt. What Congress did do was to provide a safe harbor for merchants who had been sued for printing such dates. We will not assume that Congress intended a greater limitation of liability than what is explicitly stated in the statutory text.

For these reasons, and consistent with our duty to interpret remedial statutes broadly, *Idahoan*, 157 F.3d at 202, we hold that § 1681c(g)(1) prohibits a merchant from printing expiration date information on a receipt provided to the consumer, even if the year is redacted. Therefore, Long

7

properly alleged that Hilfiger violated FACTA.

**2.**

Having determined that Long properly alleged a violation of FACTA, we next ask whether FACTA authorizes him to recover for the violation. Long concedes that he did not suffer any actual damages, and instead requests statutory damages together with punitive damages and attorneys' fees under 15 U.S.C. § 1681n(a). As noted above, however, Long is not eligible for such relief unless he can allege, and ultimately prove, that the violation of the statute was "willful." *Id.*

The Supreme Court addressed the willfulness requirement of § 1681n(a) in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). In *Safeco*, the Court considered a provision of the Fair Credit Reporting Act which requires notice to a consumer subjected to "adverse action . . . that is based in whole or in part on any information contained in a consumer [credit] report." 15 U.S.C. § 1681m(a). With respect to an insurance company, an "adverse action" is defined in part as "an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for." *Id.* at § 1681a(k)(1)(B)(i). The defendant insurance companies in *Safeco* argued that they did not violate the statute by failing to give notice, because the plaintiffs' claims were based on "initial rates charged for new insurance policies." *Safeco*, 551 U.S. at 60-61. The defendants argued that the initial rate for a new policy "cannot be an 'increase' because there is no prior dealing" between the parties. *Id.* at 61. In other words, the defendants argued that the statutory reference to "increase in any charge" was meant to cover "change[s] in treatment for an insured, which assumes a previous charge for comparison." *Id.*

The Supreme Court rejected the defendants' interpretation, concluding that applying the statute to initial rates for new policies is a "better fit with the ambitious objective set out in the Act's statement of purpose." *Id.* at 62. Although finding a violation of the statute, however, the

8

Court concluded that the violation was not willful because the willfulness component is not met "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law *substantially greater than the risk associated with a reading that was merely careless*." *Id*. at 69 (emphasis supplied). Accordingly, the Court held that a violation does not cross the willfulness threshold just because a defendant's interpretation is erroneous; it must instead be "objectively unreasonable." *Id*.

The "objectively unreasonable" standard was not met in *Safeco* for several reasons. First, the statute itself was "silent on the point from which to measure 'increase'" and the Supreme Court considered the statutory text "less-than-pellucid." *Id*. at 69-70. Second, the defendant's proposed interpretation had a "foundation in the statutory text . . . and a sufficiently convincing justification to have persuaded the District Court to adopt it." *Id*. Finally, the Court noted that "[b]efore these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC." *Id*. at 70. Accordingly, the Court concluded that the defendant's reading was not objectively unreasonable, and fell "well short" of meeting the willfulness standard. *Id*.; *see also Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803-04 (7th Cir. 2010) (applying *Safeco* to conclude it was objectively reasonable for merchant to believe § 1681c(g) did not apply to e-mailed receipts).

In light of *Safeco*, we conclude that Hilfiger's interpretation of the statute is not "objectively unreasonable" and, thus, that Long has not stated a claim for a willful violation of FACTA. Just as in *Safeco*, Hilfiger's interpretation of § 1681c(g)(1) has some foundation in the text, as Hilfiger could believe that the statute did not apply based on what it considered to be the plain meaning of the phrase "expiration date." That phrase is not defined in the statute itself, just as the statute in *Safeco* was silent as to the point from which to measure an increase in a charge for insurance. Furthermore, despite the fact that we reject Hilfiger's interpretation of the § 1681c(g)(1) language, it was

9

at least sufficiently persuasive to convince the District Court to adopt it. Although Long argues that there was district court authority putting Hilfiger on notice that its interpretation was incorrect,[2] there was no guidance from the federal courts of appeal on this issue.[3]

Long's additional arguments on this point are unpersuasive. He contends that it is possible that Hilfiger "did not actually rely on *any* interpretation" of § 1681c(g)(1), and instead "disregarded the statute altogether and is only now seizing upon a *post hoc* 'objectively reasonable' interpretation in order to shield itself from liability." Appellant's Br. at 25. This argument, however, is expressly foreclosed by *Safeco*, which held that evidence of subjective bad faith or intent of the defendant is irrelevant when there is

[2] Long cites, for example, *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960, 964 (N.D. Ill. 2007); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 970 (C.D. Cal. 2007); and *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1171 (D. Kan. 2008). These decisions are not directly on-point because they involve merchants who, unlike here, printed the *entire* expiration date.

[3] Long argues there was agency guidance on this issue, citing to a brief FTC "Business Alert" indicating that merchants "must delete the card's expiration date[, f]or example . . . EXP: ****." Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts (May 2007). We are doubtful that this Business Alert constitutes the kind of "authoritative guidance" from the agency envisioned by the Supreme Court. *See Safeco*, 551 U.S. at 70 n.19 (rejecting the FTC document relied upon by plaintiffs because it was a letter written by an FTC staff member that "did not canvas the issue" in question and was merely an informal opinion not binding on the Commission). In any case, we cannot conclude from this Business Alert standing alone that Hilfiger ran a risk of violating FACTA substantially greater than the risk associated with a reading that was merely careless.

an objectively reasonable interpretation of the statute that would allow the conduct in question. *See Safeco*, 551 U.S. at 70 n.20. Thus, Long's allegation about Hilfiger's actual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis. For these same reasons, we are also unpersuaded by Long's argument that he requires discovery to establish Hilfiger's subjective knowledge. *See Shlahtichman*, 615 F.3d at 803-04 (affirming a 12(b)(6) dismissal of a FACTA complaint in part on the ground that the defendant's proffered interpretation was objectively reasonable); *Safeco*, 551 U.S. at 71 (concluding defendant's interpretation was objectively reasonable and finding "no need . . . to remand the cases for factual development").

In sum, we conclude that Hilfiger's interpretation of § 1681c(g)(1), although erroneous, was at least objectively reasonable. Hilfiger did not run "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. Accordingly, Long has not stated a claim for a willful violation of FACTA, and the District Court did not err in dismissing his complaint.

## III.

For the foregoing reasons, we will affirm the order of the District Court.